**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0571n.06

No. 09-3466

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Jun 05, 2012*

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,                )
                                         )
      Plaintiff-Appellee,                )
                                         )
v.                                       )        On Appeal from the United States
                                         )        District Court for the Southern
CONTENTS OF SMITH BARNEY CITIGROUP )              District of Ohio
ACCOUNT NO. 34-19, ET AL.,               )
                                         )
      Defendants,                        )
                                         )
JAMES DOYLE,                             )
                                         )
      Claimant-Appellant.                )


Before:      BOGGS, NORRIS, and KETHLEDGE, Circuit Judges.

        BOGGS, Circuit Judge.  James Doyle appeals the district court's grant of summary judgment that resulted in the civil forfeiture of approximately $500,000 that Doyle had on deposit in a Smith Barney Citigroup account.  The district court granted summary judgment because Doyle failed to prove that he was an innocent owner of the money under 18 U.S.C. § 983(d)(3).  We affirm the district court's decision.

I

James Doyle was a retired American Airlines ramp-services supervisor in 2000, when he met and began dating Harriet Warshak. R.116 at 6–7. Doyle soon began to work for Harriet Warshak's son, Steve Warshak.

In 2000, Doyle helped Steve string advertisements on shoelaces for one business. *Id.* at 7. He was paid $100. *Id.* at 8. In 2001, Doyle worked for Warshak's company, Lifekey, sending out mailings. He was paid roughly $5,000 that year. *Id.* at 10. In 2002, Doyle worked at least 40 hours per week for Lifekey. *Ibid.* He was paid about $14,000 for his work that year. *Id.* at 21. In 2003, Doyle worked at least 40 hours per week at Lifekey. He was paid $56,475 in wages and $34,493 in non-employee compensation. *Ibid.* In 2004, Doyle received wages from Lifekey as well as Berkeley, another company operated by Steve Warshak. He worked in shipping for both companies. *Id.* at 10–11. Lifekey paid Doyle $8,000 in wages and Berkeley paid him $94,000 in wages. *Id.* at 21.

On September 22, 2004, Steve Warshak gave Doyle a check, drawn on the account of TCI Media, one of Steve's companies, for $1,000,000. Steve, when presenting the check, told Doyle: "Here, that's for everything you have done." R.116 at 13. Doyle admitted he was very surprised to receive the check. Warshak gave Doyle the check at an informal get-together at Harriet Warshak's house, specifically stating that "I started to cry because never did I expect anything like that." *Id.* at 13.[1]

---

[1]Warshak also gave his mother and his two sisters checks for $1,000,000 each. The jury in Warshak's criminal trial found that these checks represented proceeds from Warshak's illegal activities.

Doyle deposited the one-million-dollar check into his Fifth Third bank account on October 1, 2004. R.116 at 14. Doyle reported the $1 million as "Other Income" on his 2004 federal-income-tax return. *Id.* at 20. This was in addition to $111,000 he reported in wages for that year. *Ibid.* Doyle then wrote checks from the Fifth Third account to the Smith Barney account numbered 30-12 for $3355.64, on December 6, 2004, and $500,000, on March 7, 2005. *Id.* at 14.

Steve Warshak was convicted of multiple counts of mail fraud, bank fraud, and money laundering after a jury trial. *See United States v. Warshak*, 631 F.3d 266 (6th Cir. 2010) (affirming Warshak's convictions but vacating his sentence and remanding for resentencing). The jury's verdict established that the contents of Doyle's Smith Barney account number 30-12 contained assets directly traceable to money laundering. R.119 at 1. The government moved to forfeit the money in the account, pursuant to 18 U.S.C. § 983.

On May 2, 2006, Doyle filed a claim in the district court pursuant to 18 U.S.C. § 983(a)(4)(A), asserting his ownership of the assets in Smith Barney Account Number 30-12. R.36. Because the government had satisfied its burden of proving, by a preponderance of the evidence, that the contents of the account were subject to forfeiture, the burden is on Doyle, as claimant, to establish that he was an "innocent owner" by a preponderance of the evidence. 18 U.S.C. § 983(d)(1). Because the $1 million-dollar check had been found to have been the product of Warshak's fraudulent activities, Doyle was required to prove (1) that he had been a bona fide purchaser for value and (2) that he "did not know and was reasonably without cause to believe" that the money was subject to forfeiture. 18 U.S.C. § 983(d)(3)(A). Doyle argued that he earned the one-million-dollar check from Warshak, as it was meant to compensate him for the work he did for

Warshak's companies in 2000 and 2001, when he was paid very little, as well to be a bonus for his work during those years. R.116 at 15. He argued that no portion of the money was a gift. R.116 at 21. He stated that he was never aware of any criminal activity on the part of Warshak—he only became aware of a criminal investigation when Warshak's business was raided in 2006. *Id.* at 22.

The district court determined that Doyle's claim failed on the first element—that he was a bona fide purchaser for value. The court stated in support that Doyle had been compensated in wages and non-employee compensation for the work he had done for Warshak. R.119 at 9. The court noted that there was no evidence that any of Warshak's other employees earned equivalent compensation for shipping and packing and that there was no evidence that the industry places such a value on those services. *Id.* at 10. The district court therefore granted the government's motion for summary judgment.

Doyle filed this timely appeal.

## II

We review the decision to grant summary judgment in a forfeiture action de novo. *United States v. $5,000 in U.S. Currency*, 40 F.3d 846, 848 (6th Cir. 1994). Granting summary judgment is appropriate when there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When reviewing a summary judgment motion, we do not assess credibility or weigh the evidence. We view the evidence in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The sole issue on appeal is whether Doyle put forth evidence giving rise to a genuine question of whether he was a "bona fide purchaser" of the one-million-dollar check. To be a bona fide purchaser, one must "'give value . . . in an arms'-length transaction with the expectation that [one] would receive equivalent value in return.'" *United States v. One 1996 Vector M12*, 442 F. Supp. 2d 482, 486 (S.D. Ohio 2005) (quoting 21 U.S.C. § 853(n)(6)(B)).[2]

We find that the record below supports the district court's ruling. We agree with the district court that Doyle has put forth no evidence to suggest that he provided Warshak with good or services equivalent in value to the one-million-dollar check he received. The context of the presentation of the check suggests that Warshak was treating Doyle like family members to whom he also gave similar checks. There is no indication that Doyle provided work to Warshak with an expectation that he would one day be compensated by such a large sum. In fact, Doyle admitted that he was very surprised to receive the check. There is simply no indication that the check was the product of an arms'-length transaction for value.

III

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[2]The civil-forfeiture statute, 18 U.S.C. § 983, does not provide a definition of "bona fide purchaser for value," so courts have borrowed the definition from the Continuing Criminal Enterprise Act, 21 U.S.C. § 853(n)(6)(B). *Ibid.*